Good morning. Illinois Appellate Court First District Court is now in session. The Third Division, the Honorable Justice Nathaniel House presiding. Case number 1-9-1-3-9-0. People vs. Clifton Carter. Good morning, ladies and gentlemen. Good morning. My name is Nathaniel House. I'm a judge of the Appellate Court and presiding over this case with you this morning are Justices Margaret McBride and David Ellis. This case is being heard via Zoom due to the COVID crisis. Will the attorneys who are going to be making a presentation today please state their names and the parties they represent beginning with the appellant. Who's representing the defendant? I think he's trying to connect. There we go. Okay, I apologize, Your Honors. I was just able to connect the audio so I didn't hear anything that was said before. Oh, okay. Well, I'll start over. We're hearing this case, you know, via Zoom due to the COVID crisis and what we're going to do, we're going to proceed this this way. We're going to allow each side to have 10 minutes of uninterrupted presentation and that will be followed by questions from the panel members of the party who made the presentation. The small amount of time for a rebuttal. We do have another case after this one, so we will be sticking pretty closely to the timelines. Do you have any questions about how we're going to proceed? If I understand Your Honor correctly, we have 10 minutes of uninterrupted presentation and then we can anticipate potential questions thereafter from from Your Honors? Yes, that's exactly what's going to happen. Okay, no additional questions. Thank you. Okay, and will the attorneys who are going to represent the parties and make a presentation today, please state their names and the party they represent, beginning with the appellant. Good morning, Your Honors. Pedro Fregoso for Mr Clifton Carter Appellant. Good morning, Your Honors. Assistant State's Attorney Phyllis Warren on behalf of the people of the state of Illinois. Okay. All right. Very well then. If there are no other questions, then Mr Fregoso, you may proceed. Thank you, Your Honor. Um, I intend to briefly discuss two issues this morning. The first being the courts, the lower courts error in denying Mr Carter's crankle motion on the basis that the failure to call Marcus Carter his brother's a witness was trial strategy. And secondly, we will discuss the lower court's assignment of a 14 year sentence to Mr Carter, which we submit is excessive in this instance. Um, on that first point, um, we, uh, contend your honor that the lower court erred in denying Mr Carter's crankle motion for two reasons, um, the first of which, uh, Mr Carter, um, his, the court was presented with two different conflicting versions, um, as to why, uh, Marcus Carter was not called as a witness to trial. Um, in the first instance, um, defense counsel informed the court that Marcus Carter was not called to testify trial because he did not return their telephone call. Um, after they had contacted him about testifying at trial. And I will just very briefly quote, quote, his explanation of the court. It wasn't a quote. My investigator early on interviewed the brother. So we had what the brother said and saw. All right. And then I contacted the brother, but he didn't call me again to see if he wanted to testify and what else he may have had after the trial. So at this point in time, the court has been informed that, um, they communicated with the brother. They had what he quote unquote said and saw based on their communications with the brother. They were interested in having him testify at trial and intended to have him testify, testify at trial. And we know this because they contacted him about testifying at trial, but they didn't call the defense counsel because he simply did not return their telephone call. So that's the first explanation provided to the court. Defense counsel moments later then explained to the court that they didn't call Marcus Carter to testify because they didn't think he was a worthy witness and didn't, um, uh, fit within their theme and theory of the case. So at this point, the court has been presented with two, uh, inconsistent conflicting explanations for why Marcus Carter was not testified at trial. And with respect to that first point, I should note the court and I'll quote very briefly, further inquired into that point and asked defense counsel, but my only question was, so you're saying that you did contact the defendant's brother regarding testifying, but he failed to contact you until after the trial defense counsel. Yes. And just, so there were two conflicting inconsistent explanations provided the court for why Marcus Carter was not called to testify. We submit that first explanation by itself establishes that the decision not to call Marcus Carter was not based on sound trial strategy, um, and established possible neglect of a clay possible neglect of the case. Um, and we know this because any trial counsel, um, at that point could have utilized several procedures under the criminal, uh, codes of procedure or the only Supreme court rules. They could have issued a subpoena at test of a condom to secure his testimony at trial, um, or they could have, uh, filed a motion asking for an extension of time to allow, uh, uh, time to secure Marcus to present his testimony at trial, such as the state had done, um, on numerous occasions to secure Ms. Alcala's testimony at trial, they could have sent a private investigator to attempt to locate Mr. Uh, Marcus Carter. There's no indication that defense counsel did any follow-up to attempt to, uh, uh, further call or identify Marcus Carter. Um, so ultimately, um, this first explanation by itself. Establishes that the decision to, um, not have Marcus Carter testify at trial when based on what they knew, he said, and saw they intended to have him testify at trial. Um, was not based on sound trial strategy, um, and represents possible neglect of the case. Um, and that, uh, would warrant reversal of the lower court's decision to deny Mr. Carter's pro se crankle motion. And secondly, your honors, um, the court also, um, did not. Resolve these two inconsistent, conflicting explanations that were presented to the court. Again, on the one hand, the court is told, we know what Marcus Carter said and saw, and we contacted him about testifying, so we want to testify. We want him to testify at trial. And then on the other hand, the court was informed. Well, we don't, um, want him to testify at trial because he doesn't fit into our theme in theory. Um, so these are two diametrically opposed, inconsistent positions that the court was presented with. And the court did not further inquire into these two directly contradictory positions, um, in attempting to fully, uh, inadequately inquire as to Mr. Carter's, uh, claims in his, in his crankle motion. Um, and that's something that, that should be addressed, um, um, by the court as well. Uh, the court in, in ruling and denying Mr. Carter's crankle motion noted that defense counsel did contact, um, uh, Mr. uh, Marcus and that they, um, they interviewed him. Um, and it wasn't like they ignored him, but at the same time, the court did not address the initial explanation provided. To, to the court saying that they didn't contact him because he simply did not return her telephone call. Um, and completely disregarded that. And again, we submit that that explanation by itself establishes possible neglect of the case. Um, because again, there were several, uh, tools available to a trial lawyer in his toolbox to secure a witness's testimony at trial. Again, subpoena asking the court to continue the trial to allow time to, to have this witness testify at trial. Um, the second point, um, was that the lack of Marcus's testimony at trial, um, uh, prejudiced Mr. Carter, um, Marcus Marcus's proposed testimony would have been that. Um, he never provided Mr. Carter a gun with which he then allegedly used to shoot Ms. Alcala, Ms. Alcala, um, as we know, testified to the contrary and said that, uh, Mr. Carter had the gun that his brother provided to him that he then used to shoot her and this trial in essence was a credibility contest between these two witnesses. Um, and the court ultimately adopted Ms. Alcala testimony on this particular point in ruling that it found in its ruling, finding Mr. Carter, uh, guilty of aggravated battery with discharge of a firearm. Um, she specifically stated, and I quote, um, you know, she referring to Ms. Alcala testified that Marcus Carter, who I know through the defendant himself is his brother is the person that handed the defendant or got the defendant, a weapon out of the blue bin, which once again is corroborated. So we know that the court, at least in part, um, relied on this testimony by Ms. Alcala that Marcus had provided her, um, with the gun, um, provided Mr. Carter with the gun that he then used to shoot her. And we know that the prosecution also heavily relied on this piece of. Testimony in their closing argument, they refer to it three separate times, um, that Marcus handed Carter the gun, which he then used to shoot her. Um, and this case is not a case where the evidence was overwhelming by any means. Um, again, this was a credibility contest between Mr. Alcala, Mr. Carter, Ms. Alcala, there was no gun found. Um, Mr. Carter denied shooting her. Um, there was no gunshot residue time, Mr. Carter to, to the scene. The plaintiff testified that after the shooting, she identified Mr. Carter on a, on an ID card, but she was seen very blurry. She was not a hundred percent. Sure. Um, when she later ID him, um, at the hospital, approximately 10 days later, um, she was on pain medications. Um, and the blood spatters in the area indicated that she was shot. But again, they did not indicate that Mr. Carter specifically had shot her. Leading could have been the result of, um, being shot by an unidentified intruder, which Mr. Carter contends. So ultimately on this, um, your honors, um, thank you. Honor on this issue. Um, Mr. Carter, um, was prejudiced by not having this testimony, uh, presented, which would have refuted Ms. Alcala's testimony and, um, support and corroborate his defense. And the two conflicting inconsistent explanations provided to the court were not based on sound trial strategy. Um, and were the result of possible neglect of the case, uh, on the second point, um, your honors, we submit that the 14 year sentence that was, um, handed down to Mr. Carter in this instance was excessive. Um, and we're aware that it falls within the six to 30 year statutory limits of the class X felony. Um, but that being said at the sentencing hearing, while the court, um, a history of mixing drug and alcohol, the court never addressed the fact that, you know, for the last several decades, he has been addicted to drugs and alcohol and that, um, he is up until that point, never had treatment for those addictions, um, and the court on the other hand, in great detail, discussed his various convictions and criminal background, um, and did not, um, fully addressed. We submit all of his, uh, his prior several decades of addiction to alcohol and drugs, um, which really was the genesis of this relationship between this defendant and the complainant in this case. Um, so for those reasons, your honor, we're asking that his 14 year sentence be, um, reduced or that the case be remanded for resentencing. Thank you. Thank you. Uh, justice Ellis, do you have any questions? Uh, I just have a few, uh, good morning, Mr. Uh, for go. So did I say that right? Yeah, that's right. Your honor. Okay. First of all, I want to thank you for participating in our pro bono program. We very much appreciate it. It's helping reduce a backlog and, uh, you have our thanks for that. Thank you. You talk about two conflicting explanations that council gave one that he did try to call Marcus back and didn't get a return call. And secondly, that he, as a matter of trial strategy, chose not to call him. I I'm wondering why you, you find those to be in conflict. Um, you know, he starts by saying that he sent an investigator out who interviewed Marcus and came away with a very uneasy feeling, I think is the phrase he said, a very uneasy feeling about Marcus and the way he spoke about the victim and that his initial judgment at least was that he would not be a worthy witness. And so, you know, he tries to call him. He said, you know, I'm, I'm taking what the council said as, as, as, you know, true, at least for the moment, he, he, he tries to call him himself. He wants to see for himself. Um, it doesn't mean, cause he's trying to call him that he is absolutely certain that the guy won't be a witness or will, he's just trying to talk to him. You know, that's what lawyers do, right? They reach out, they get a feel for witnesses. They try to make judgments. So why is it so inconsistent to say, well, I did try to talk to him, but ultimately I relied on my investigators feeling this guy would be a lousy witness. Well, your honor, I think if we look at the trial courts, um, follow up question on this point, um, it might add some clarification. So the trial court judge, um, when initially presented with the first explanation that this is on, um, our one-on-one asked, um, trial counsel. But my only question was as to, so you're saying that you did contact the defendant's brother regarding testifying regarding testifying. So my reading of this is that the brother, after learning what he quote unquote, um, said, saw and said, so they know what he saw and what he said. Defense counsel then contacts him about testifying. My assumption is testifying at trial, but he being Marcus then failed to contact you being defense counsel until after the trial. So my reading is that they, after learning what Marcus saw and said, were based on that knowledge of what he saw and said, intended to have him present his testimony at trial. Why? Because according to the court's query and defense counsel's answer, he then contacts the brother regarding testifying, not regarding talking or further seeing what information he may have. Um, but the brother, unfortunately then fails to contact him after the trial. And I would also know, um, if I may, that in that initial explanation, defense counsel also states that, um, you know, and I quote, um, He didn't call me again to see if he wanted to testify and quote unquote, what else he may have had after the trial. So it appears to indicate that he may have had additional information of which defense counsel, um, did not further probe or investigate relative to the defense of his client, which I think would also support a conclusion that the decision not to call him was not based on a sound trial strategy. But aren't you kind of reading those two explanations in, in vacuums as if they can't compliment one another? I mean, it seems to me like those things are all things that the judge would have taken into account ultimately. I mean, when he says I called him back regarding testifying, I, I think you're taking that to read that he was absolutely certain that he was going to call Marcus as a witness when he placed that phone call. But if you listen to what he says later about his investigators, uneasy feeling it seems hard to believe that he had conclusively decided that just because he was trying to talk to a person who he'd never spoken with before. Well, I think your honor, the, the investigator, um, had spoken with, uh, Marcus and the investigator had knew what he said and saw, and I'm assuming that was relayed to defense counsel. Well, that's what defense counsel said, right? It was relayed to him that the investigator came away with an uneasy feeling about how this guy spoke about the victim and didn't think he'd be a worthy witness. I mean, a lawyer can, there's nothing wrong with the lawyer. In fact, it's a good thing if he was trying to, you know, reconfirm that or take his own look. And it sounds like he says he tried to, but ultimately if, if he's got an investigator, he trusts who says, this guy doesn't seem like a very good witness. He probably hurt us more than we'll help us. Um, isn't it perfectly adequate trial strategy to, you know, not fret too much about the failure to return phone calls and ultimately confer with your client and just decide to go on without him. Well, I think that's certainly a possibility, but, um, uh, our reading, your honor, is that the court was given these two, what we consider to be inconsistent positions. And there was no additional follow up inquiry to resolve these two points. Um, but, but certainly, um, yes, you're absolutely correct. Further, further along in the, in the, in the query, he did say that he didn't think he was a worthy witness. Um, but our position is that. That first part of the explanation was that they did think that he, based on what they knew, he saw and said that they would contact him about testifying at trial and unfortunately it just does not appear that the lower court followed up on any questioning to resolve these seemingly inconsistent explanations. Okay. Thank you very much. Counsel. Thank you. Justice McBride. Do you have any questions? Just a couple. Good morning, minister for growth. So morning, your honor. You, you would agree that traditionally the decision to whether to call a attorney, I would certainly agree with that. Your honor. And there's, there's numerous cases on that point. When we look at this decision by the trial judge under the more recent, you know, Illinois Supreme court cases wrote us and then the Jackson case, the standard of review that we're looking at is whether the court manifestly aired.  That is correct. Your honor. And it's a pretty tough, uh, tough road to hoe, isn't it? Because we have to find that, uh, that no one really would agree with this. It's, you know, evidence and no other conclusion would, would support what the trial judge did here. Isn't that kind of a shorthand description of manifest error? That that's correct. Your honor. It certainly is. I know you've already kind of answered that, but, um, just one other I'll, I'll go to the sentencing, um, that is even a more difficult standard for our review. That is abuse of discretion. Is it not? Whether the court abused its discretion in sentencing, Mr. Carter to 14 years. Yes, your honor. That is correct. And that's the most important thing. Most deferential standard. Um, was it, if this is true, it's very sad that Mr. Carter, uh, was off drugs and alcohol for a number of years, but, but then at the same time, the conviction seemed to be running all through that timeframe. Am I missing something? Was there significant evidence that he actually was sober for 10 years or more? Yes, your honor. There were periods, there was a period of time in it. You're right. I believe it was actually more than 10 years where he was sober. Well, yeah, I think he said it was 14 or 18 years. I don't know if that's the case. It's, it's, you know, obviously a tragic situation, but I, I also noticed that all during, it seems like there wasn't really a period of where he was free from being in and out of jail. So I, I, I'm not sure. Uh, am I misreading the record that the convictions seem to correspond with a 20 year period or am I missing something? No, that's, that's correct. Your honor. They have to know within generally speaking within a 20 year period or so. All right. Well, I also want to say thank you, uh, for assisting in the pro bono program. And I will say both briefs were well-written and concise. So that that's always a plus. I don't have any other questions. Thank you, justice. Um, I don't have any questions. Both of my colleagues have adequately covered everything. Thank you. Uh, and thank you, Mr. Figueroa. See, I'll say that too. Thank you for participating. Uh, okay. Um, Ms. Warren, you may proceed when you're ready. Thank you, your honors council, your honors. Uh, this court should affirm defendant's aggravated battery with the firearm conviction and sentence. The trial court here did not manifest the error when it denied defendants pro se motion, alleging ineffective assistance of trial counsel and the trial count, the trial court, excuse me, properly exercised its discretion. When it fastened defendants, 14 year sentence regarding the Prinkle, uh, preliminary inquiry. The record here demonstrates the court properly conducted such an inquiry where the court discussed the claim with defendant, discussed the claim with trial counsel and evaluated the claim based on its knowledge of trial counsel's performance that the court personally observed when it presided over defendants through day bench trial, a bench trial in which the defendant demanded second after consideration of defendants pro se and effective claim. The court determined trial counsel's decision to forgo calling markets Carter was a matter of trial strategy and the ineffective claim lack merit. This determination was not manifestly erroneous during the preliminary inquiry, as counsel mentioned, defendant told the court that markets would have testified that he didn't have a gun and defendants submitted that would collaborate his testimony that he didn't shoot the victim. However, there were no conflicting explanations given by trial counsel when the court inquired about this, uh, why he didn't present Marcus Carter's testimony during the court's discussion with trial counsel, trial counsel told the court, I interviewed my investigator interviewed Marcus. So I was aware of all of Marcus's statements and what his proposed testimony would be. He also told the court that the defense theory of the case was based on what defendant told counsel and Marcus's statements didn't fit into our theme and theory. He stated that Marcus didn't play a role into that, which matched what defendant told him. He also told the court that he didn't think markets as this court mentioned that he would be a worthy witness because of an uneasy feeling. He told the court that Marcus's statements made to the investigator would only hurt the case, not add it, add to it, excuse me. And it was a strategic decision. Marcus's proposed testimony further was not highly relevant or exculpatory. Both the victim and defendant agreed in their testimonies. Marcus wasn't even present in the basement. When the shooting occurred, the victim testified that Marcus left the basement at least 20 minutes before and defendant testified, Marcus had gone upstairs. His proposed testimony did nothing to discredit the victim's credible testimony that it was the defendant who shot her, nor does it undermine her unwavering identification of defendant as her shooter, where she identified his photo on his ID at the scene. She identified defendant 10 days later at the hospital from a six person photo ray. And she identified defendant as the shooter in court under oath at trial. There was no evidence presented that the victim had any motive to lie about the identity of her shooter. And that was something noted by the trial court in its finding of guilt. Marcus's proposed testimony, if even believed, is merely inconsistent with the victim's statement that she saw Marcus hand defended the gun at least 20 minutes before defendant shot her. In case law is clear, minor conflicts and inconsistencies in testimony do not destroy the credibility of the witness. The court, after discussing the claim with both defendant and trial counsel and evaluating the claim based on its own personal knowledge of counsel performance at trial, denied the motion. The court specifically determined that trial counsel's choice not to call Marcus was a strategic one and determined that defendant failed to demonstrate possible neglect of this case by trial counsel. In fact, the court noted that trial counsel had performed his duty as a lawyer and that the court specifically found trial counsel didn't do anything wrong. Based on this record, it's clear the trial court did not manifestly error when it denied defendant's pro se motion alleging ineffective assistance of counsel, where the decision to forego calling Marcus was a matter of trial strategy and lack merit. Regarding defendant's 14 year sentence, the trial court properly exercised its discretion after considering the aggravating and mitigating factors. As counsel mentioned, the sentencing range, and as your honors are aware, the sentencing range for a class acts of six to 30 defendants, 14 year sentence was eight years above the minimum 16 below the maximum well within the statutory guidelines and the most important sentence, important sentencing factor. Excuse me. The most important sentencing factor, the seriousness of the offense warranted a 14 year sentence. The defendant here took a loaded gun, pointed it at the victim's hip and fired. Leaving her in tremendous pain, bleeding with her intestines hanging out. She was hospitalized for five weeks, placed in a medically induced coma for five days and required three surgeries to repair the damage defendant inflicted upon her. Thankfully, she survived her injuries and the circumstances surrounding his crime warranted a 14 year sentence. He took advantage of the victim's status as a prostitute. He supplied her with illegal drugs. When she ran screaming and bleeding out of his basement, he didn't do anything to render aid. He didn't call the police and ambulance. He got his drugs and he fled. His actions that day demonstrated an utter disregard for the victim's life. And as your honors have alluded to in counsel, his criminal history warranted a sentence. He was a seven time convicted felon whose crimes dated back to 1991 and included convictions for aggravated DUI. Possession of a controlled substance, robbery, vehicular hijacking and possession of a stolen motor vehicle. Not to mention he had seven misdemeanor convictions ranging from 1989 through 2011. And those included resisting or obstructing a peace officer, reckless conduct, domestic battery. The court, the trial court here, your honors didn't just consider the factors in aggravation. The court weighed those factors as well as the mitigating factors. The court specifically recognized that when fashioning defendant state sentence, excuse me, it was required to consider defendant's possibility of rehabilitation. And there's nothing in the record to suggest that the court failed to do so. And as counsel recognizes, the trial court did consider his drug and alcohol addictions. His claim that the trial court didn't assign it sufficient weight to those factors is meritless. What defendant's actually asking this court to do is actually what the Illinois Supreme court in Alexander and Stacey prohibit. Reweigh the aggravating and mitigating factors presented because he's not pleased with the sentence he received below. And this request is wholly improper because he cannot and has not pointed to anything in the record to indicate the trial court did not adequately consider the mitigation before it, other than the sentence itself. The trial court has no obligation to recite and assign value to each factor presented at a sentencing hearing when crafting the appropriate sentence. And, uh, counsel, um, didn't say the case by name, uh, Casanova, but, uh, talked about rehabilitative strategy. Um, but yes, Novich maintained that long periods of confinement have little, if any value in rehabilitative strategy, but it's defendants rehabilitative potential that the trial court must consider now, whether the Illinois prison system will help or hinder it. And the trial court was well aware of defense alcohol and drug abuse and properly considered it along with defendants rehabilitative potential and properly weighed those factors along with the factors in aggravation. The 14 year sentence crafted by the trial court was not an abusive discretion. It is for these reasons. And the reason stayed in the people's brief that the people maintain this court should affirm defendants conviction and sentence for aggravated battery with a firearm. Thank you. Thank you, Ms. Warren, uh, justice Ellis. Do you have any questions? I, I do just a couple, uh, good morning, Ms. Warren. I don't want you to feel left out. We appreciate your participation today too. Um, obviously. Um, so it seems to me that, that what, what defendant is saying here is that we had competing narratives. We had a story from the victim that Marcus handed the gun to the defendant and the defendant then used it later on Ms. Alcala, whereas the defendant's theory, his narrative, his testimony was what gun? I, I, I didn't have a gun. I mean, he didn't quite say I didn't have a gun. I don't think, but he said, I didn't bring a gun to this. Somebody who he thought was in cahoots with Ms. Alcala, um, was coming down to rob me. We struggled over the gun and it went off. And you talk about a minor inconsistency about who gave him a gun. If you look at it in a vacuum, maybe what does it matter if the defendant had the gun himself or Marcus gave it to him? But the bigger point I think, which I'd like you to address is the defendant is saying we didn't have a gun at all. Somebody else brought it. And so if I could bring Marcus to the witness stand to say, I never gave my brother a gun, um, that would, and if that were a convincing testimony, uh, that would put a pretty big hole in what Ms. Alcala was saying. So how do you respond to that? Your Honor, the trial court weighed the credibility of the defendant and the victim and found that the defendant's theory and testimony was completely incredulous. Counsel had that information before him when he made the determination about whether or not to call Marcus Carter. He also found that Marcus, it wouldn't just be part of Marcus's statement. It would be all of his statements. And he found that Marcus's statements would hurt the case, not help the case. It was clear from counsel's discussion with the trial court about his decision that it was a strategic one. And it doesn't, uh, and for those reasons, the court's determination wasn't manifestly erroneous. Um, and perhaps, uh, it's just, excuse me. I'm sorry. I'm a bit nervous. Let me just take a breath. Um, it wasn't a matter of who handed the gun to the defendant. It was a matter of who shot the victim. And Marcus's testimony doesn't do anything to undermine that the victim unwaverly unwaverly we testified it was the defendant. Um, and it's for these reasons that we feel that counsel adequately explained this was a strategic decision. And the court, um, understood that and evaluated that based on counsel's performance and found that, uh, the claim lack merit. Well, how, how is it? I mean, the defense counsel said in a somewhat cursory fashion that he didn't fit within the theme and theory of the case, but what we know of Marcus's and ergo, he never handed a gun to the defendant. How does that not fit into the defendant's theory of the case? I mean, the defendant says my brother didn't hand me a gun. I didn't have a gun. And, um, Marcus wasn't a part of this. This guy came in and, you know, attacked me and the gun went off. I mean, how does what Marcus have to say not fit within the theme and theory of the case? I don't think it was just, uh, that portion based on what trial counsel, um, stated, uh, it was the totality of all of Marcus's statements didn't fit into the theme and theory of the case. Uh, and, uh, Marcus's, um, testimony based on what he told the investigator would hurt the case, not help it, uh, 20 minutes before the victim's testimony was that 20 minutes before the shooting even happened is when the gun was handed to the defendant. Um, by Marcus, Marcus's denial of that has no bearing on whether or not 20 minutes later, the defendant actually shot him, uh, or excuse me, actually shot the victim. Um, it would be, it's a state's position. That would be a minor inconsistency. The issue of the case is who shot the victim, not how the gun got into the shooter's hand. Well, I think that's downplaying it a little bit. Don't you? I mean, Mark defendant's theory is I didn't have a gun. He didn't give me a gun. The gun was only there because somebody brought it in from outside the house. And so if Marcus says, yeah, I didn't give him a gun. It's not just a question of how did the defendant get the gun? It's a question of, I mean, if, if Marcus was convincing, I, if the judge believed Marcus, um, that would put a pretty big hole in what Ms. Alcala was saying, wouldn't it? Perhaps it might have been, um, inconsistent with Ms. Alcala's testimony, your honor, but that's not what we have here. What we have is Marcus's proposed testimony is merely that I didn't have a gun. That's all the defendant side was that Marcus would have testified I didn't have a gun. I don't know what his other statements were regarding, um, the gun. Uh, the Ms. Alcala statement was that the defendant retrieved the gun from, uh, a bid. So Marcus's statement that I didn't have a gun isn't even necessarily inconsistent, um, with Ms. Alcala's overall statement, which is the brother retrieved the gun from a bid and handed it to the defendant. And I don't, that's why, um, I don't need to downplay it. Um, but that's why the people maintain that his testimony really isn't significant looking at the overall evidence, um, and testimony of Ms. Alcala. Okay. And based on what the defendant's proposed testimony of what it would be. Thank you. Okay. Thank you very much. That's all I have. Okay. Thank you. Just, um, justice McBride. Do you have any questions? No, I don't have any questions at this time. Thank you. Okay. Well, the defendant's going to argue getting back to what justice Ellis was asking you about this narrative. Uh, the defendants is arguing that the victim gave a narrative about what happened in this situation. And it's a credibility contest and, uh, the judge weighed the victim's, uh, credibility in this case. But what the defendant is saying, the judge believed the story about the brother handing the gun. That narrative would have been affected or discredited if the brother himself said that's not what happened. And that goes to how this whole incident went down. And, uh, he's stating that he was predictive when this witness was not called. Isn't that a plausible, reasonable argument? Uh, it's, it's an argument, your honor. Um, however, the trial counsel who had the investigator actually speak with him with Marcus said he didn't think Marcus would be a worthy witness and it wasn't just helpful, doesn't get to, excuse me, not counsel defendant. Doesn't just get to cherry pick portions of what the defendants, uh, what Marcus's statement would be, that would be helpful or not helpful. Mark the trial counsel indicated that Marcus's statements would be, um, harmful and wouldn't add anything. So it wouldn't just be the, um, I didn't have a gun. Um, which again, really doesn't undermine, um, what Ms. Stating because you can not have a gun and pass someone a gun. Um, and it's not really be inconsistent. Um, but he doesn't get to just cherry pick part of it. And counsel interviewed him and knew all of what Marcus's statements were and said, first, he wouldn't be a worthy witness. His statements didn't match what defendants were. That's an important part of this. Uh, and it didn't fit into the theme and theory. So there's other statements that counsel trial counsel is alluding to that wouldn't have helped the case. And for those reasons, uh, it was a strategic decision that counsel weighed the benefits versus the detriments of having this witness testify and decided that he would just hurt the case. All right. All right. I have no other questions. Um, if no one else has anything else, uh, Mr. For grossly, you can proceed with a short rebuttal. Thank you, your honor. Um, the defense theory in this case all along was to show that someone other than, um, Mr. Carter shot, um, Ms. Alcala on this case. Um, and for the court to have accepted defense counsel's claim that he would not have fit into the theme or theory of the case, having observed the trial. I think, um, what was erroneous and we, if we look at the record in this case, defense counsel during the cross-examination asked, um, the, the Ms. Alcala, somebody else came through the basement door. That's his question. He also, this is at R 85. He also asked, um, Ms. Alcala during his cross-examination. It wasn't my client that shot you. It was another individual. During the closing arguments of the trial defense counsel stated, and it, there was another individual that shot her that's in the supplemental record page 108. So all along the, the objective and the trial strategy, the defense theory was that someone other than Mr. Carter had shot him and we submit that. To not have Marcus's testimony at trial, who would have said I did not provide Mr. My brother, uh, with this gun, which plaintiff, which Ms. Alcala contends he then used to shoot her was a significant and unfortunately damning blow to the defense of Mr. Carter's case. It would have refuted Ms. Alcala's testimony that he provided Mr. Carter with the instrument that ultimately was allegedly used to do. To shoot her while at the same time corroborated his own defense. And again, the court, um, accepted this vital piece of evidence. And we know this because in there, in the court's ruling, she specifically referenced to it. Um, so we submit that this testimony was not some minor, um, sideline inconsistency that would have had no outcome if the trial, I try or fact would have accepted that Marcus testimony is credible, um, beyond a reasonable doubt, coupled, you know, with the other evidence in this case, we submit that it would have been enough for the court to have had a reasonable doubt whether Ms. Alcala was in collaboration with some other unknown person who then came to the house and shot was involved in a fight with Mr. Carter, and then she was shot or whether, um, Mr. Carter was given the gun by his brother. But unfortunately the court did find Mr. Carter guilty, but it was without the benefit of having this vital piece of testimony from Marcus Carter, who defense counsel had earlier explained to the court that based on what they knew he said and saw, they contacted him about testifying at trial. But unfortunately that never came to realization because he didn't call him until after the trial. Um, so for those reasons, your honor, your honors, um, we're asking the court, um, to reverse the trial courts, um, decision finding, um, or denying Mr. Carter's, uh, pro se crankle motion on the basis that the decision not to call Marcus was not the product of sound trial strategy, but rather, um, it was a result of possible neglect of the case and that the record establishes that Mr. Carter was prejudiced as a result of this vital piece of evidence that would have supported his defense while refuted the state's case against him. And unless the court has any other questions, I think we're, we'll rest. I don't have anything else. Okay. Well done as well. And, uh, we'll take this case under advisement. A decision will be entered in due course. Thank you very much. Have a great day.